No. ——

First Circuit Appeal

J. SIMIUS GUILLORY v. OLEPHUS L. FUSELIER

(June 30, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Evidence—Par. 58, 59.**

The burden of proof is on the defendant to show his special defense that he shipped rice to New Orleans at the instance and direction of the party who had deposited it in his warehouse without causing the surrender of the warehouse receipts.

2. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial judge, which is amply supported by the testimony, facts, and circumstances, being eminently correct, is affirmed.

Appeal from the Parish of Evangeline, Hon. B. H. Pavy, Judge.

This is a suit in which the plaintiff as assignee of warehouse receipts of the defendant sues for the value of the rice represented by these receipts. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Dubuisson, Perrault and Burleigh, of Opelousas, attorneys for plaintiff, appellant.

L. A. Fontenot, of Opelousas, attorney for defendant, appellee.

ELLIOTT, J.    Dissents with reasons.

LECHE, J.    Concurs with reasons.

MOUTON, J.    Theovide Guillory deposited in September, 1920, 103 sacks of rice in the warehouse of Fuselier, defendant, situated in Mamou; and, in November, 1920, Oscar Ledoux deposited there, 155 sacks. Defendant issued receipts for the rice to the depositors. Plaintiff, as assignee of these receipts, sues defendant warehouseman, for the value of the rice so deposited by his assignors, Guillory and Ledoux, alleging that defendant had refused to make delivery of the rice, claiming that it had been sold at the request of Guillory and Ledoux. The demand of the plaintiff was rejected and he appeals.

The receipts not being marked across their face "not negotiable" or "non negotiable", plaintiff alleging that he bought them in good faith, supposing they were negotiable, claims that he, may, at his option, treat them as imposing on the warehouseman the same liabilities he would have incurred had the receipts been negotiable.

Counsel for plaintiff say in part, quoting "The receipts in this case were ignored by the warehouseman, who delivered the goods, or rather, shipped them out without causing the surrender of the receipts. His defense is that he shipped the rice to a mill in New Orleans at the instance and direction of the parties who had deposited the rice in the warehouse and who had negotiated the receipts, to plaintiff. As to that defense, the burden of proof is on the defendant".

This presents the vital issue in the case.

Hilaire Guillory, a witness for defendant, says, that he sent wagons to Theovide Guillory to take his rice to the defendant's warehouse. He says, Theovide knew the rice was to be shipped to the mill, because he told him so, and that when he so informed him, Guillory said "it was all right". True, this witness says he did not see the rice carried to the warehouse, but he is certain Theovide was willing to have it taken there, and thereafter to have it shipped to the mill.

Dolsay Guillory, a brother to Hilaire, above named witness, says, he had told Hilaire to tell Theovide to haul his rice to town from where it could be shipped,

as he had no place to put it under shelter. This testimony of Dolsay explains the reason of the message delivered to Theovide by Hilaire. Meance Vidrine, another witness for defendant, says, Theovide Guillory had authorized him to say to defendant he was willing to have his rice shipped. He says, ten or twelve days thereafter, defendant asked him if he could ship Theovide Guillory's rice, to which he then answered he was without authority to say that he could, but he says that Guillory had not, however, countermanded his first order. Defendant is positive that Theovide Guillory told him to do the best he could with his rice; and that shortly before the rice was shipped, he met Guillory on the road, and there got his permission to ship the rice. From the testimony of Hilaire Guillory and Meance Vidrine it is apparent that Theovide Guillory desired to have his rice shipped as he was not in a position to take care of it for lack of shelter. It is also well established by the record that at that time there was an abundance of rice for which there was no sale on the market. This condition of affairs had brought on a situation which made it extremely difficult for the planters to dispose of their rice. In order to assist the planters to dispose of their crop, it is shown that the rice was pooled, and was sent to the mills where it was cleaned, and sold for their benefit. After deducting the necessary expenses, returns of the sales were made and the balance distributed to the respective owners of the rice.

As there was no way of selling rice at that time in Mamou or vicinity at any reasonable figures, it can be reasonably inferred that the planters, including Guillory and Ledoux, were more than willing to have their rice shipped and sold at the mill on the pooling arrangement which gave them a chance to realize a decent price for their rice. As this condition of affairs existed, we fail to see why the statement of defendant and the two other witnesses in reference to the willingness of Guillory and Ledoux to have the rice shipped to the mill, should not be believed. Defendant is postive that Ledoux gave him orders to ship the rice he had deposited at his warehouse. L. M. Couvillon, cashier of the Farmer's State Bank of Mamou, says, Ledoux cashed a check at his bank for $232.75, drawn against the proceeds of the rice which defendant had shipped for him to the mill and sold. This amount, he says, was drawn after the account of sales had been turned over to Ledoux. This check was drawn by the cashier, and which, Ledoux, not knowing how to write, endorsed by making his cross-mark. Rougeau signed the check as a witness to the endorsement. He says, he saw when Ledoux signed, and that the amount was paid over to him in money by the cashier. Guillory and Ledoux deny that they ever consented to have the rice shipped, and Ledoux denies that he ever signed the check or received a cent from the bank.

Obviously, the district judge found that the rice had been shipped and sold, with their consent or permission, and that Ledoux had also received payment for the amount which had been realized from the sale of his rice. We find that this conclusion of the trial judge is amply supported by the testimony, facts and circumstances of the case, which justified the rejection of the demand.

Affirmed.

---

LECHE, J. Concurring:

According to the decision of Brock vs. Atteberry, 153 La. 649, 96 South. 505, the plaintiff in this case, holding a non-negotiable warehouse receipt, stood, when he made demand upon defendant, in the shoes of his transferrers, Guillory and Ledoux.

The question of fact, whether defendant had delivered or returned the rice to Guil-

lory and Ledoux, or accounted to them for its value, was decided in the affirmative by the trial judge and I see no error in that finding. If then, defendant could not be held liable towards Guillory and Ledoux when plaintiff made demand, neither could he under the cited decision, be held liable towards plaintiff.

I therefore concur in the decree written by my associate, Judge Mouton.